IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHARON LEE WHEAT,                               Case No. 3:16-cv-01064-JR

            Plaintiff,                                 OPINION AND ORDER

     v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

            Defendant.

RUSSO, Magistrate Judge:

       Plaintiff Sharon Wheat brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits and Title XVI Social Security Income. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1969, plaintiff alleges disability beginning September 21, 2010, due to memory loss related to a stroke, anxiety, nonverbal learning disorder, high blood pressure, and eczema. Tr. 210, 212, 242, 245. On January 21, 2015, the Administrative Law Judge ("ALJ") issued a decision finding plaintiff not disabled. Tr. 21-34. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

## THE ALJ'S FINDINGS

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 23. At step two, the ALJ determined the following impairments were medically determinable and severe: "organic mental disorder and affective disorder." Id. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 24.

The ALJ next resolved plaintiff had the residual functional capacity ("RFC") to perform medium work as follows:

> She can lift and/or carry 50 pounds occasionally and 25 pounds frequently in an eight-hour workday. She can stand and/or walk for six hours and sit for six hours in an eight-hour workday. She must avoid concentrated exposure to extreme cold, extreme heat, and humidity. She can perform simple routine tasks that consist of Specific Vocational Preparation (SVP) 1 or 2 type tasks. She can have occasional contact with co-workers and the public. She is unable to perform work activity that requires a fast-paced assembly line pace.

Tr. 26.

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. Tr. 32. At step five, the ALJ concluded plaintiff could perform a significant number of jobs in

the national and local economy despite her impairments, such as small products assembler, housekeeping cleaner, and garment sorter. Tr. 33.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) mistreating medical evidence from Jill Spendal, Psy.D., Luahna Ude, Ph.D., and Joshua Boyd, Ph.D.; (2) rejecting the lay statement of her sister, Debra Zahrowski; and (3) failing to resolve an ambiguity in the vocational expert's ("VE") testimony.

### I. Medical Opinion Evidence

Plaintiff contends the ALJ wrongfully discredited mental health evidence from Drs. Spendal, Ude, and Boyd. There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of examining physicians are generally accorded greater weight than the opinions of non-examining physicians. Id. (citations omitted). To reject the uncontroverted opinion of an examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. Id. (citation omitted). If an examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons supported by substantial evidence. Id. at 830-31 (citation omitted).

#### A. Drs. Spendal and Ude

In July 2012, Dr. Spendal performed a "Learning Disorder, Cognitive & Psychological Assessment" on plaintiff over the course of two days. Tr. 428-49. Dr. Spendal's evaluation consisted of a structured clinical interview, collateral data from Ms. Zahrowski, and eight objective tests. Id. Although plaintiff's intellectual and achievement testing were in the low-

average to average range,[1] her memory scales revealed moderate impairment. Tr. 440-41. Testing related to visual attention, visual processing speed, mental flexibility, verbal fluency, and brain dysfunction also indicated limitations of function. Tr. 441-42. Plaintiff was unable to complete depression and anxiety inventories due to her "thinking style and . . . difficulty answering questions." Tr. 442. According to Dr. Spendal, validity testing "suggest[ed] [plaintiff's] effort was reliable" during the examination. Id.

Dr. Spendal diagnosed plaintiff with "NonVerbal Leaning Disorder"; "Cognitive Disorder NOS (following stroke)"; "Major Depressive Disorder, Recurrent, Moderate"; and "Schizotypal Traits." Tr. 443. In the narrative portion of her report, Dr. Spendal identified, amongst other things, plaintiff's areas of weakness, including interpersonal functioning, attention, anger and irritability, and processing speed. Tr. 444-45. Dr. Spendal opined that plaintiff

> will need a sheltered workshop and likely [will only be able to work] part time [due to] increased fatigue and decreased initiation/motivation since her stroke. The amount of energy it will take her to work even part time given her barriers will be significant. She will need the help of a job coach to find and learn a new job. She will need an employer willing to work with her barriers. Even with accommodations and understanding, if [plaintiff] cannot control her frustration she is not likely to keep a job. [Plaintiff] has likely seen all the improvement she is going to see in her cognitive functioning, given the stroke was almost two years ago.

Tr. 445. Dr. Spendal then listed a number of work-related accommodations and recommendations based on plaintiff's nonverbal learning and cognitive disorders. Tr. 446-49.

---

[1] Specifically, plaintiff's verbal comprehension was in the average range; her perceptual reasoning, processing speed, and full scale IQ were in the borderline range; and her working memory was extremely low. Tr. 437. Nevertheless, based on her "pattern of scores," Dr. Spendal indicated plaintiff had "the capacity to intellectually function in the *Average* range." Tr. 438 (emphasis in original). Plaintiff's achievement testing identified her "scores in reading and writing [as] generally consistent with her highest intelligence score"; "math skills are . . . an area of weakness but not an area of learning disorder." Tr. 439.

The ALJ gave "little weight" to Dr. Spendal's opinion because it was "grossly inconsistent with [plaintiff's] presentation and performance during the examination, as well as her high level of functioning in her personal life." Tr. 30. By way of example, the ALJ noted "there is nothing in the record to suggest that [plaintiff] is restricted to a sheltered work environment or a job coach, as she is able to handle the mental demands and stressors of serving as the primary caregiver for her mother and independently managing all aspects of her activities of daily living." Id.

The ALJ may reject a medical opinion that is contradicted by the doctor's underlying notes. Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (citations omitted). Likewise, an ALJ may afford less weight to a medical opinion that is inconsistent with the claimant's activities of daily living. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). Here, however, substantial evidence does not support the ALJ's conclusion that Dr. Spendal's opinion was contravened by her examination notes or plaintiff's daily activities.[2]

Concerning Dr. Spendal's examination findings, the ALJ relied exclusively on the fact that Dr. Spendal observed plaintiff to be "pleasant and friendly yet slightly awkward," with a stable mood, flat affect, and intact speech, thought processes, and thought content. Tr. 27, 434-35. Yet Dr. Spendal's broad observations during plaintiff's mental status exam have no bearing

---

[2] The Commissioner argues that lesser reasons are required to reject Dr. Spendal's report because "the ALJ was presented with conflicting mental opinion evidence." Def.'s Resp. Br. 4. The Commissioner's assertion is not born out by the record. In fact, there is no evidence, contradictory or otherwise, from any other treating or examining acceptable medical source and the opinion of a non-examining doctor that "cannot by itself constitute substantial evidence." Lester, 81 F.3d at 831 (citations omitted). Moreover, the portions of the record the Commissioner identifies as conflicting either expressly pertain to plaintiff's physical conditions (and therefore have no bearing on her mental functioning), are consistent with Dr. Spendal's report, and/or are not from a medical source. In any event, even assuming a lesser standard is applicable in the case at bar, the fact remains that the ALJ's decision is not supported by substantial evidence.

on the results of the valid clinical tests that formed the basis of Dr. Spendal's opinion. In other words, the fact that plaintiff presented as pleasant and logical, albeit slightly awkward and depressed, does not diminish Dr. Spendal's diagnoses and the functional limitations associated therewith. This is especially true given the extensiveness of Dr. Spendal's report and the fact that she carefully linked each conclusion to an objective medical basis.

Regarding plaintiff's activities of daily living, the ALJ depended heavily on plaintiff's purported role as primary caregiver to her mother. Indeed, the other evidence pertaining to plaintiff's daily functioning suggests relatively limited activities. See, e.g., Tr. 262-69, 293-300, 349-51. There is no evidence of record, however, defining the extent of plaintiff's caregiving. Rather, the record merely evinces that plaintiff needed to reschedule an appointment because her mother would be in "[r]adiation . . . for lung cancer . . . for six weeks" in mid-2013 and plaintiff was "the main caregiver while her two sisters are backups." Tr. 486-88. As plaintiff correctly denotes, "this single characterization resulting from a missed appointment has been repeated throughout the record to undermine plaintiff despite her consistent testimony that she did not provide extensive care to her mother."[3] Pl.'s Opening Br. 6.

Nonetheless, assuming the record could reasonably be interpreted as supporting the ALJ's finding that plaintiff's caregiving activities were significant during this brief period, it is well-established that "claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); see also Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[o]ne does not need to be utterly

---

[3] Both plaintiff (at the December 2014 hearing) and Ms. Zahrowski (in a lay statement dated December 2014) clarified that plaintiff lives with their mother – who was more independent prior to 2013 – but is only able to care for her, as well as their household, with the help of others. Tr. 55-57, 59-60, 349. An independent review of the record reveals no evidence to contradict these statements.

incapacitated in order to be disabled") (citation and internal quotations omitted). Moreover, plaintiff's caregiving activities, even if extensive, do not speak to Dr. Spendal's medical conclusions relating to plaintiff's impairments in cognition and interpersonal functioning. See Ghanim, 763 F.3d at 1162 (ALJ erred in rejecting medical opinions when "a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities").

Therefore, the ALJ erred in discrediting Dr. Spendal's opinion. By extension, the ALJ also erred in rejecting Dr. Ude's opinion solely for being "based on Dr. Spendal's opinion." Tr. 30; see also Tr. 491-92 (Dr. Ude reviewed plaintiff's psychological records in August 2012 and opined she was "[n]ot a good candidate for competitive employment").

### B. Dr. Boyd

In August 2013, Dr. Boyd reviewed the record on behalf of the Social Security Administration. Tr. 110, 113-15, 127, 130-32. Dr. Boyd opined, in relevant part, that plaintiff could sustain attention and concentration only for "simpler 1-2 step tasks," and "need[ed] a predictable job setting with continued help from [vocational rehabilitation]." Tr. 114-15, 131-32.

The ALJ afforded "great weight" to Dr. Boyd's opinion but did not incorporate or otherwise expressly reject these limitations in formulating the RFC. Tr. 26, 31. This is problematic given that work involving "simple, routine tasks" is distinct from work involving "1-2 step tasks." See Kimble v. Berryhill, 2017 WL 3332256, *4 (D. Or. Aug. 4, 2017) (reversing the ALJ's decision under analogous circumstances, explaining that "a limitation to '1-2 step tasks' is more restrictive than a limitation to 'simple, repetitive tasks'") (collecting cases). Furthermore, although not identical to Dr. Spendal's report, Dr. Boyd's restriction to a

incapacitated in order to be disabled") (citation and internal quotations omitted). Moreover, plaintiff's caregiving activities, even if extensive, do not speak to Dr. Spendal's medical conclusions relating to plaintiff's impairments in cognition and interpersonal functioning. See Ghanim, 763 F.3d at 1162 (ALJ erred in rejecting medical opinions when "a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities").

Therefore, the ALJ erred in discrediting Dr. Spendal's opinion. By extension, the ALJ also erred in rejecting Dr. Ude's opinion solely for being "based on Dr. Spendal's opinion." Tr. 30; see also Tr. 491-92 (Dr. Ude reviewed plaintiff's psychological records in August 2012 and opined she was "[n]ot a good candidate for competitive employment").

### B. Dr. Boyd

In August 2013, Dr. Boyd reviewed the record on behalf of the Social Security Administration. Tr. 110, 113-15, 127, 130-32. Dr. Boyd opined, in relevant part, that plaintiff could sustain attention and concentration only for "simpler 1-2 step tasks," and "need[ed] a predictable job setting with continued help from [vocational rehabilitation]." Tr. 114-15, 131-32.

The ALJ afforded "great weight" to Dr. Boyd's opinion but did not incorporate or otherwise expressly reject these limitations in formulating the RFC. Tr. 26, 31. This is problematic given that work involving "simple, routine tasks" is distinct from work involving "1-2 step tasks." See Kimble v. Berryhill, 2017 WL 3332256, *4 (D. Or. Aug. 4, 2017) (reversing the ALJ's decision under analogous circumstances, explaining that "a limitation to '1-2 step tasks' is more restrictive than a limitation to 'simple, repetitive tasks'") (collecting cases). Furthermore, although not identical to Dr. Spendal's report, Dr. Boyd's restriction to a

Page 7 - OPINION AND ORDER

"predictable job setting with continued help from [vocational rehabilitation]" suggests that plaintiff may be unable to remain competitively employed without the assistance of a job coach or other work-place accommodations. Tr. 115, 132. Thus, the ALJ erred in regard to Dr. Boyd.

Because the ALJ's RFC assessment did not adequately account for all the limitations described in the reports of Drs. Spendal, Ude, and Boyd, the ALJ's error in rejecting this medical evidence was not harmless. Tr. 26-32; see also Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). As a result, the Court declines to address plaintiff's other allegations of error, as they primarily relate to how the ALJ's failure to properly assess Dr. Spendal's opinion impacted the ALJ's treatment of Ms. Zahrowski's testimony and step five finding. The ALJ's decision is reversed and remand is necessary.

## II.     Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The court nevertheless may not award benefits punitively. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ erred in evaluating the medical opinions of Drs. Spendal, Ude, and Boyd. The record before this Court is ambiguous regarding the extent of plaintiff's allegedly disabling mental impairments. On the one hand, Drs. Spendal and Boyd endorsed numerous work-place restrictions related to plaintiff's memory, concentration, and/or socialization. Tr. 113-15, 130-32, 443-49. Additionally, Dr. Ude indicated plaintiff was not competitively employable. Tr. 491-92. On the other hand, plaintiff testified at the hearing that she was looking for work and thought she was mentally capable of some full-time jobs. Tr. 49-50. Further, plaintiff's most recent work-study through vocational rehabilitation reflected no problems with motivation, attention, and following instructions; learning work-related tasks, and attending to details. Tr. 515-18. The Court also notes that, while not dispositive, the ALJ wholly overlooked opinion evidence from plaintiff's treating source concerning the extent of her eczema. Compare Tr. 24, with Tr. 528.

In light of these ambiguities, further proceedings are required to resolve this case. Upon remand, the ALJ must re-evaluate the record and, if necessary, reformulate plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 8th day of September 2017.

 s/Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge
